Jamil Malik Bey
in propria persona, and in the capacity of Trustee
on behalf of the Immortal Jamil Malik Bey Reversioner
Trust in Northwest Amexem
In care of: [391 Ellis Street
via San Francisco, California Republic]
Zip Exempt non-domestic
415-767-6676
Claimant

FILED

JAN 2 0 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

Marimar Cornejo
Post Office Box 410046
San Francisco, California [94141]
Co-Claimant

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

**AGT**

CV **22**    **00411**

Jamil Malik Bey, privately, and in the
capacity of Trustee on behalf of the Immortal
Jamil Malik Bey Reversioner Trust in
Northwest Amexem authorized representative
for Beneficiaries Marimar Cornejo and Minor
Heru Ibrahim Brokemond Bey

                    Plaintiffs,

    vs.


Christina Wells in her capacity as Regional
Manager of MOSSER COMPANIES INC.;
MOSSER COMPANIES INC; the building
commonly known as "952 Sutter Street"  San
Francisco, California, Block No. 0280 lot No.
011; Doe Defendants 1-99


                    Defendants.

CASE NO.:

Bill of complaint for
1.  unjust enrichment
2.  **declaratory and injunctive Relief**

Claim for Violation of the Fair Housing
Act; (42 USC §3601 et sq)

Pendent Tort Claims

## **Introduction**

-1-

1.      For purposes of this action, 'Racial Discrimination' or a 'Discriminatory act based on race or colour,' shall aside from the meaning established by the language found in the United States Code of Law, it shall also have the meaning as set out in Part 1, Article 1, of the International Convention on Elimination of all forms of Racial Discrimination, where State parties undertook to eliminate all forms or racial discrimination, see Articles 2, 5.

2.      Defendant MOSSER COMPANIES INC., (hereinafter "MOSSER"), is a STATE OF CALIFORNIA corporation, its officers and employees engage in the property management business, and regularly engages in the sale or rent of dwelling units in the regular course of business, and is authorized to issue 100,000 shares of class A Stock and 900,000 shares of Class B Stock. Mosser has an impressive collection of properties around the San Francisco Bay area mainly focused in the downtown area. As stated below, a lease agreement went into effect, and over the course of the term of the lease and the dealing prior thereto, Mosser employees engaged in a pattern of discriminatory actions which is threatening the peaceful enjoyment of our home, and further which is causing harm in everyday life, and has caused humiliation and mental anguish and Defendants refuse to cease and desist from discriminating against us and denying us equal access to the building among other things, and Defendants have been given fair notice of their conduct which there exist a legal duty to abate.

3.      This action is commenced in Personam against Defendants and Doe Defendants, and in Rem against land and real property, your orator being myself, Jamil Malik Bey, in propria persona and in the capacity of Trustee of the Immortal Jamil Malik Bey Reversioner Trust in Northwest Amexem, which holds rights and interest in the subject premises, and in the causes of action and judgment which are the subject of this action, the Trust being private and cognizable in a court of equity.

4.     I come in good faith with clean hands, and at all times mentioned in this action, I am carrying out a Trust and sue on behalf of my 1-year-old son Heru Ibrahim Brokemond Bey and his Mother Marimar Cornejo, who are beneficiaries of this Trust, who have claim and title to the relief requested against Defendants, and who were injured by the actions of Defendants as set out below.

5.     Further, at all times, I am exercising a natural right to self-preservation of myself and family which our right to the peaceful enjoyment of housing, and to maintain housing in habitable conditions is being threatened by the actions of Defendants and other United States persons named Doe Defendants, which violate natures law and the laws of the United States as set out hereafter, and this Court may take jurisdiction over the persons and the subjects which are set forth hereafter pursuant to the Constitution for the united States of America Article III Section II.

### Jurisdiction

6.     The District Court may take jurisdiction over the causes of action pursuant to United States Code of Law, Title 28 Section 2201, which is known as the "Declaratory Relief Act"; by 42 USC Section 3601 et sq, known as the Fair Housing Act; by Article 3 Section 2 of the Constitution for the united States of America and (28 USC 1331) (federal Question); by 28 USC 1367 Supplemental jurisdiction, and by International Obligations imposed on the United States pursuant to its humanitarian and human rights duties as set out in international Treaties of the United States, such as the International Covenant on Civil and Political Rights, The International Convention on the Elimination of All Forms of Racial Discrimination, the U.N. Convention against Torture, Genocide, and other forms of Cruel, Inhuman, and Degrading Treatment or Punishments, and international legal Documents such as The Universal Declaration of Human Rights, and The Declaration on the Rights of Indigenous Peoples, Articles 1, 2, and 8(2)(e) which establish customary international norms such

as that indigenous people shall be free from racial discrimination and discrimination based on their identity (Article 8(2)(3).

## Parties

7.      I, Jamil Malik Bey, claimant and creditor, (hereinafter "claimant"), am a Moorish American, the descendants of ancient Al Moroccans who are aboriginal and indigenous natural born inhabitants of the land and soil at the Continental United States of America, by birthright and primogeniture inheritance.

8.      Marimar Cornejo, (herein after "Co-Claimant") is a California citizen of Aztec Decent perceived as Mexican American.

9.      **Defendant Christina Wells** is sued in her capacity as a Regional Director and Property Manager of MOSSER COMPANIES INC., and on information and belief is a California citizen and employee of the entity operating in the name Mosser Companies INC.

10.     **Defendant MOSSER COMPANIES INC., (Corporation # C2570327) (hereinafter and heretofore "Mosser")** is a Corporation organized under the laws of California having a principal location of business at 220 Montgomery Street Suite 2000, San Francisco, California 94104.

11.     The building located on the geographical marker, latitude 37.7884, and longitude -122.4161, also known as "952 Sutter Street" San Francisco, California, Block No. 0280 lot No. 011.

12.     **Doe Defendants 1-99** are employees of Mosser Companies INC who are liable for violations of the Fair Housing Act and other breaches as set forth hereafter, and further are other persons acting in a criminal agency engaging willfully with evil motive in harassment, stalking, and other forms of cruel, inhuman, and degrading treatment on and around the premises with the aid of others, and with the intent to cause for the conditions of life to be unsustainable, and doing so on the basis of my perceived racial identity and national origin being from the original people of America,

descendant of the ancient al Moroccans, and who's acts consist of making false reports and rumors of my alleged behavior, making unwanted sudden contact frequently appearing near our front door, frequently appearing at elevator and building entry points at the same time or slightly before I get there, frequently blocking or delaying the elevator at times when it will prevent or delay our use, and blocking exit and entry points with the intent to interfere with our peaceful enjoyment of the premises among other things.

13.  **Declaratory and Injunctive decree is requested declaring the following:**

(1) that I Claimant, being an aboriginal and indigenous people at north America, have both an internationally recognized right, and constitutionally protected fundamental right and freedom to a nationality, and to self-determination as recognized in the ICCPR Part I, Article I Section I, and in U.N. 61/295 General Assembly Declaration on the Rights of Indigenous Peoples, Article IV.

(2) that I as an aboriginal and indigenous people have the right to the full enjoyment as a collective or as an individual, of all human rights and fundamental freedoms as recognized by the Charter of the United Nations, the Universal Declaration of Human Rights, and international human rights norms, as set out in the U.N. 61/295 General Assembly Declaration on the Rights of Indigenous Peoples, Article I.

(3) that Mosser employed persons that engaged in acts or practices towards us that were discriminatory in violation of the Fair Housing Act, either because it discriminated against our perceived race or national origin, or a disability we suffered form during the term of the lease.

(4) that the acts of the persons who made false and defamatory allegations concerning our conduct as set out hereafter, was propaganda to incite racial or ethnic discrimination prohibited by Article 8(2)(e) of the U.N. Declaration on the Rights of Indigenous Peoples.

(5) that Mosser breached our lease agreement by doing the following:
a. failing to provide habitable premises which was a duty implied in the contract and imposed by California Civil Code Section 1941.1.
b. failing to deliver up the keys to the front access points upon possession and in a reasonable time upon our request.

(6) that due process and fair dealing require Defendant Christina Wells to furnish to our immediate possession all incidents of reports of allegations made concerning our

alleged behavior occurring at or around the premises, and that good cause exist to disclose the personal information in order to allow for pursuance of the truth of the statements, which is necessary to protect and repair our reputation and character from the damage caused by them, which information should include but not be limited to the date, time, and location of the report or allegation, and the name, telephone number, and mailing address of any person making the allegations and any witness which was allegedly present, and a complete summary of the actions taken by Mosser after receiving the alleged complaints.

(7) That Defendant MOSSER inclusive of all successors, employees, agents and assigns, shall forever be enjoined from engaging in acts towards us which are either discriminatory, harassing, annoying, or which deprive us of the peaceful enjoyment of life, liberty, and the pursuit of happiness.

## **Facts**

14.     Generally speaking, the Term "Race" denotes the entire body of humans on the planet earth, however for purposes of the Fair Housing act it takes on the meaning which relates to the general public's perception of the concept of racial identity. Therefore, the record should reflect that over the course of my entire life, the public perceives me as a "Black" or "African American" person according to my physical looks and bloodline ties to the melaninated people of North America. During my life I previously identified as Black or African American, although now I identify as Moorish American, I cannot change the inherent nature of my bloodline or physical appearance, and therefore am continuously discriminated against based on my appearance which is perceived to be black, and under the international obligations of the United States to prevent discrimination based on race, descent, or national origin, other human rights obligations, I request the national court use its power to make a remedy for the violations by defendants as set out hereafter.

15.     At all times mentioned in this complaint, the Defendant Mosser is a Corporation organized under the laws of the STATE OF CALIFORNIA, has a legal duty to obey the Constitution and laws of the United States, and was vicariously liable[1] for the acts of its employees who's conduct

---

[1] "it is well established that the [Fair Housing] Act provides for vicarious liability." See *Meyer v. Holley,* 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003).

as set forth hereafter caused the injuries as set forth in this here action for Damages and Declaratory and Injunctive Relief, and further which amounted to violations of the Fair Housing Act codified as 42 USC Section 3601 et Sq, which occurred during the course of 7 or more months during the negotiations, promises, and ultimate execution of the Lease.

16.     At all times mentioned in this complaint, MOSSER was the employer of the Doe Defendants and Defendants who were responsible for carrying out the acts which breached our lease contract with MOSSER, and further which amounted to discrimination under the Fair Housing Act, and the types of discrimination done to us were both a covered issue and a covered basis under the Fair Housing Act such that this Court could Grant the relief requested, to enjoin Defendants from continuing to violate the fair housing act as well as the customary international norms established by the aforementioned International Treaties and Resolutions, and to provide relief in the form of actual, compensatory, and punitive damages in the amount of 100,000 in lawful money of the United States or its legal substitute for each discriminatory or retaliatory act done by Defendants and each of them against us in the course of our renting housing from Defendants, which totaled at least 7 separate acts.

17.     We are informed and believe that that the employees of MOSSER and each of them who committed the aforementioned violations and wrongful acts against us, all played some distinct role in carrying out the duties related to processing applications, showing units to prospective tenants, delivering the keys upon execution of the lease agreement, responding to Tenant complaints, and maintaining the premises free from nuisance or inhabitable conditions.

18.     On information and belief, Christina Wells is an employee of MOSSER who is a regional director and property manager of the building where we maintain our home, and she is directly responsible for ensuring that we have access to the front wheelchair access gate, and that we have access to habitable premises, that there is no nuisance present at the premises, and that she or

other persons in her control or supervision are not using discriminatory practices in the renting of housing.

19.     As set forth below, Christina Wells and other Doe Defendants who were employees of MOSSER between the months of March 2021 and January 2022, rather than respect their duties under the lease agreement and under public policy, instead engaged in acts which discouraged us from the purchase or rental of a dwelling managed by MOSSER, Limited to us privileges, services or facilities as set out in this claim, failed or delayed performance of maintenance or repairs to us as set out hereafter, used different qualification criteria, applications, or rental standards or procedures as set forth, and imposed different sales prices or rental charges for the sale or rental of a dwelling as set out in this entire claim.

20.     Claimants aver that the following acts were done by Defendants and were violations of the Fair Housing Act since they were done for one of the purposes stated above and prohibited by the Act, and further were done on the basis of discrimination towards our perceived racial identity or color in violation of the Act:

   a.  On April 8, 2021 MOSSER employees approved co-claimant Marimar Cornejo's application submitted for housing nearly a week earlier on March 29, 2021, and without seeing what we look like. The next day after approval on April 9, 2021 we appeared to view open units to choose one which we did, and were told by MOSSER Employees we would receive a lease agreement for review and signature the next day, however that did not occur and MOSSER employees sent an email April 12, 2021 saying the acceptance was only conditional upon tender of a promissory note from Homeless Prenatal.  On April 14th Defendants sent another email saying that Marimar Could come on April 15, 2021 for lease signing, and set the appointment to April 15

between 4-5 P.M., however on April 15 MOSSER said the application was still being reviewed and was not approved, and no lease is available for signing and no key, which is a complete reversal of the approval status, and made the previous representations of the approval fraudulent misrepresentations which we relied on to our detriment. MOSSER employees on the April 16th requested more documentation from Marimar which was sent immediately, and the same day homeless prenatal tendered the promissory note that was supposed to be the hold-up initially. On April 17, 2021 MOSSER requested that I be added to the lease agreement, and also requested bank statements for an account where pecuniary earnings were displayed, which was tendered to Defendants on April 19, 2021, and confirmed by MOSSER received on April 20. However, after taking an excessive amount of time on each step, on April 21 the Property Manager of Mosser named Micha told us he would have an answer by the end of the day, and went on later that day to Deny the Application with the intent to do so indefinitely.

b. MOSSER Employees during the entire month-long process of engaging in the above practice of making housing unavailable after a bonafide offer to us, which constitutes a refusal to rent to us under the Fair Housing Act codified as 42 USC 3604(a), chose the specific tactics of making numerous delays to stretch out the amount of days it took to complete the application process in order to cause fatigue, and then denied our second application based on information Defendants Already had when Defendant's approved the first application, showing prejudice towards us which started after Defendants first saw our physical looks.

c. Defendants also caused us to redo steps already done, such as submit more financial information after they already had enough from the beginning when they made the first approval, and further causing us to make and submit a promissory note in addition to a lease agreement to Defendants which were tactics to delay the process with the intent to coerce us to abandon our right to the housing which was secured by an approved application. Defendants knowingly and intentionally delayed the processing of our Rental Application so that it took more than 30 days, with full knowledge that at the time we were spending nearly $100 per day for temporary emergency shelter at a Hotel with our entire personal effects inside of a moving truck, and that we were required to continuously move to different hotels during that time, moving the truck with us, and Defendants hoped we would get frustrated and therefore abandon the Application Process.

d. Defendants further used discriminatory practices by showing to us only units in the back of building when there were vacant units in the front of the Building which we could have rented, and Defendants did so based on discrimination towards our perceived racial identity of Black and Latino making those units unavailable but later renting them to persons who are perceived as non-Black and non-Latino, and who did not have children under the age of 18 such as we do.

e. MOSSER Employees after approving us for the second time, went on to delay and postpone answering several of our habitability complaints in a reasonable amount of time, which had the result of leaving our unit in conditions which were uninhabitable according to California Civil Code Section 1941.1 for extended periods of time ranging in months, and Defendants knowingly kept uninhabitable premises with a fly

infestation inside our Dwelling, and Defendants intentionally delayed performance and never performed repairs or maintenance in removing the infestation based on the racially motivated reasons above, and finally only contacted someone to verify there existed a fly infestation who did not abate the nuisance, who linked the infestation to several factors outside of our control such as the dirty windows and lack of screens, and the area where the building is located, but never removed the infestation by any method of pest control leaving it unabated.

f.   MOSSER Defendants during the aforementioned dates and times used additional discriminatory practices in denying us equal access to the front gate when other tenants had access, and did so based on our perceived racial identity of Black and Latino, and Defendants never attempted to engage in fair and open conversation with us to determine our need for access to the front gate. Defendants refuse to give us the key as promised from the inception of the contract, and only gives us access to the electronic entry point which requires us to carry our son, stroller, and groceries up the stairs in order to reach the elevator so that we can travel to the 5th Floor, which all could be alleviated if Defendants would only provide us access to the Gate.

g.   MOSSER Defendants used discriminatory practices in denying us a right to keep a service animal at our dwelling initially, on the basis of racial discrimination, until we argued our right with MOSSER employees, who later treated our service animal as a Pet in order to wrongfully charge us a Pet Deposit and Rent each Month which is stated on the Face of the Lease Agreement. Defendants should have reasonably known Defendants were prohibited by the Fair Housing Act from charging us a pet deposit and rent for a service animal, and Defendants at each stage from the move in process

up until this day have attempted to Deny us of a Right which others on the premises are openly engaging in, giving us the feeling we are being discriminated against on several occasions. By Defendants repeated actions towards us, a reasonable person would believe Defendants were prejudiced towards us or acting in a Discriminatory manner based on our perceived racial identity of Black and Latino, especially since Defendants denied us a right to keep a service animal or pet when several other non-Black and non-Latino tenants kept pets or service animals on the premises thus showing unequal treatment and access.

h. MOSSER Defendants after unilaterally rescinding the approved application shortly on or after April 9, 2021, and not only delayed the process requiring us to resubmit bank statements which Defendants already received and used to make the first approval determination, but Defendants in addition increased the burden and cost for us to move in by setting new conditions requiring homeless prenatal to become surety for for the entire term guaranteeing our rent obligations. This was discriminatory on the basis of our perceived race[2] or colour of Black and Latino, which is a covered basis for discrimination under the Fair Housing Act.

i. MOSSER Defendants for Discriminatory and retaliatory purposes, deactivated my Key Fob in the month of December locking me out of the premises for two days. Defendants proclaimed the Key Fob Needed to be replaced, but oddly Defendants did this act shortly after Co-Claimant Cornejo made several complaints to MOSSER employees about the broken elevator failing to be fixed for nearly two weeks.

---

[2] Defendants by their actions showed that the discrimination against Marimar was mainly based on and directed towards discrimination against Claimant Bey which was evident by the timing of the discrimination directly after seeing claimant Bey show up on the premises wearing the National Headdress of the Al Moroccans.

Defendants told me to go to Eddie Street to MOSSER TOWERS to pick up a new key FOB but when I arrived, there was nobody there who had any knowledge or directions to provide for a Key FOB showing that Defendants Stood me up after Locking me out, and caused for me to go an additional day without access to any front entry point.

### Background

21.     In the year 2020 while lawfully in possession of housing, and not in breach of any obligations under the lease, we were subjected to perjury and vexatious litigation by Abigail Bloomking and her accomplices who committed a retaliatory act against us for raising habitability concerns and for raising other just issues, which I have not yet recovered from injuries I received by her actions. After spending nearly a year defending myself against her vexatious action, Marimar Cornejo who was caring for our new-born son, in order to prevent a period of homelessness reached out to a non-profit called Homeless Prenatal, which agreed to secure housing so that we could smoothly transition from one location to the next without a period of homelessness.

22.     MOSSER after approving our application, had enough time to gain knowledge about our perceived racial identity and national origin, and did so mainly when we showed up at the premises on April 9, 2021 to see available units, and Defendants directly afterwards immediately began a pattern of subjecting us to discriminatory acts and practices in order to coerce us to abandon our application process as stated in this claim.

23.     When we submitted the application to Defendants March 29, 2021 Defendants had nearly 15 days to approve the application before we were required to leave our previous housing which would ensure a smooth transition without a gap in time, and Defendants approved it in a reasonable amount of time by April 8, 202 showing Defendants could act in a reasonable prompt manner prior to having knowledge of our perceived racial identity and my national origin, giving us a

feeling of relief that we would not face a period of homelessness as a result of a retalitory act done by Abigail Bloomking and her accomplices, only to be shocked and startled when immediately after showing up to view the premises showing Defendants our face on April 9, 2021, we were intentionally delayed by Defendants from signing the lease past the date we were required to move from our previous housing, and ultimately denied by Defendants while we were waiting for the delay to end while staying at a hotel, which was cruel and reasonably caused us mental anguish under the circumstances.

24.     Defendants acts in initially approving the application of Claimant Cornejo, and then subsequently pausing the approval effectively revoking it and requesting for the same or similar documentation to be produced by her all over again, and in addition asked for me to be added to the lease, clearly made housing unavailable according to the provisions of the Fair Housing Act (42 USC 3604), and appeared to be directed towards myself based on race, color, or descent. It was only after extended negotiations and persistent communication from Co-Claimant and advocates at Homeless Prenatal that Defendants agreed to reverse their decision to deny us, but made us submit a new application rather than revisit the first one that was approved and later denied, showing that defendants made us go through different qualification or application processes than other tenants who were not required to apply twice and fill out the same application twice, or produce additional financial records or sureties.

25.     MOSSER employees at the time prior to us signing a lease, but after the approval of the second application, as mentioned above, denied our request to keep a service animal telling us animals are not allowed on the premises when other non-Latino and non-African-American tenants have dogs, showing discrimination towards us. We initially gave notice that we keep the dog for two

- 14

purposes, (1) as a contractual duty, and (2) to be used by us as an emotional support dog to help us maintain a positive mental state during severe ongoing traumatic circumstances.

26.     MOSSER Defendants, after initially denying us a right to keep a service animal at the housing, later agreed but wrongfully charged us a Deposit in the amount of $500, and Rent of $75 per month for a Pet when a Service animal does not qualify as a pet according to the Fair Housing Act, and therefore Defendants act in charging a separate deposit and a pet fee violated the Fair Housing Act and was clearly discriminatory as shown by the pattern of several other acts done over the term of 7 or more months By Defendants which appeared Discriminatory and which further either violated state, local, or federal regulations.

27.     Each and every month up until January, Defendants received a credit from us directly or on our behalf in the amount agreed upon, showing our good faith, which was an 'over-credit', and we at all times were not in breach of any obligations or duties to Defendants, or were excused from doing so by Defendants wrongful conduct or unjust enrichment as set out, but Defendants breached several duties owed to us by contract  or by being imposed through public policy, which devalued the premises and failed the consideration due and owing to us as bargained for in the lease agreement, making the amount of rent overstated and inaccurate.

28.     Defendants were aware of several complaints to them regarding their failure to deliver the gate key which provides wheelchair and disabled access into the building. On two occasions shortly after we made a complaint to Defendants about failing to deliver the front gate key, Defendants instead of contacting us to comply with our request, contacted us directly or through an agent and accused us of wrongdoing on the premises, first of stealing groceries a tenant left in the hallway, and recently the ridiculous accusation that we were reported to have been pan-handling (**See**

**Exhibit B pg. 1)** inside of the building and letting people inside of the building from the street, all which if true would make a reasonable person hesitant to give us a front gate key.

29.    We think it extremely odd that these bizarre and insulting accusations as stated above are being alleged by MOSSER Defendants without any proof or substantiation thereof, and at a time when Defendants are in receipt of several complaints from us about a broken elevator and a request for the front gate key, and when as shown in exhibit "B" Defendant Christina Wells after accusing us of letting people inside of the building from the street, mentioned she was aware of our outstanding request for a gate key, indicating she was aware of her failure to comply, and that she instead was replying with false and insulting allegations concerning our alleged behavior.

30.    Not only are these claims offensive, outrageous, false, they are unsubstantiated and Defendant Christina Wells refused my request for the name, telephone number, and address of the person making those statements, and refuses to provide the identity or substantiate the allegations when she is also aware that there are people who are tenants inside of the Building, who are doing the aforementioned acts which constitute harassment and stalking etc.

31.    At law, a person who makes an allegation must come forward to allow the person who is aggrieved to examine them and disprove their allegations in front of witnesses, this is only fair and just. However, Defendant Christina Wells wishes to allow for allegations against us to remain outstanding which the validity has not been proven, thus leaving us with a damaged reputation and humiliated by those statements, and further Christina has indicated that she is taking adverse action against our right-to-access to the building based on those allegations, thus denying the ability to bring ourselves whole, and showing discrimination on the basis aforementioned.

32.    Oddly, each time we asked for Defendants to abide by a duty Defendants owe to us or which should be a reasonable accommodation such as providing us access to the front gate which

- 16 -

other Tenants have access to, since we use a stroller and have other business which requires regular access to the door in order to move equipment from my apartment to a transport, Defendants made allegations against us as aforementioned showing a retaliatory and discriminatory purpose.

33. Unless Defendants can substantiate the above-mentioned allegations, the record reflects that MOSSER Defendants created the defamatory allegations only to justify refusing us access to the front gate. Defendants show this by their conduct especially looking at the close proximity in time from when a request for access was made and a subsequent negative allegation concerning our behavior.

34. MOSSER Defendants used a Discriminatory business practice or policy since Defendants give certain tenants access to Front Gate who who are elderly, and who are renting one of the units in the basement, but deny access equal to mothers and fathers who have children under two years of age, who are bound to strollers which are wheel chairs.

35. Defendants were fully aware of our sons age, and of the condition that co-claimant was temporarily disabled for several months after a car accident, and underwent treatment at a chiropractor for her injury, and thus Defendants likely treated us unequal and discriminated towards us based on family status, racial identity, or national origin as aforementioned in the entire claim.

36. At all times we relied on the fraudulent misrepresentations of Defendants to our detriment and suffered the losses mentioned in this entire claim as a result of being misled through the eviction process leaving us stranding in emergency shelter awaiting access to housing offered by Defendants.

**First Cause of Action**
**Violation of the Fair Housing Act (42 USC §3604 (a))**
Refusal to Rent/making housing unavailable based on Racially Motivated reasons

37.     We the Claimants hereby reallege and incorporate each and every allegation of the claim as though set forth in full herein.

38.     We qualify as persons entitled to the protections of the Fair Housing Act on the basis that a lease agreement is now active between Defendants and us, and that Defendants did make a bonafide offer to rent housing to us, and later unilaterally rescinded that offer making housing unavailable, and Defendants were not otherwise exempt from the Fair Housing Acts provisions.

39.     Defendants in doing the acts as described in this claim which violated the fair housing act, such as making housing unavailable after making an offer and receiving our acceptance, was willful, intentional, and showed reckless indifference towards our rights, especially considering the multiplicity of acts done by Defendants over the span of 9 or more months which violated the fair housing act, and which showed a willful intent to violate clearly established Federal Policy or Statutes.

40.     As set out above and by our reference, we recall the acts of Defendants which occurred during the application and approval process which indicates discriminatory practices based on race and color. Defendants offered Marimar Cornejo housing through the Homeless prenatal Program which helps pregnant mothers and mothers with newborn babies acquire housing, and made her choose a floor plan and submit an application prior to viewing a unit, which was submitted and approved, and shortly after appearing to see the unit showing our face to Defendants for the First time, the application status was changed to denied, showing that Defendant made housing unavailable after making a bonafide offer to rent, and further indicating a racially motivated basis to make the housing unavailable.

41.     The sudden change of our Application status from approved to denied, is clearly an indicating factor of racial animus necessary to show Defendants acted based on racial discrimination

especially because the reason cited by Defendants for the denial was purportedly due an event which was disclosed to Defendants in the application which was already approved, and therefore could not be a valid basis to deny us housing.

42.     Defendants in the totality of their actions showed prejudice towards us, and made us feel that we were unwanted on the premises, and Defendants actions were coercive, intending to cause us to abandon our application process and later the premises out of fatigue from Defendants discriminatory treatment and practices as stated above, such as denying us the front Gate Key while giving it to other tenants who are not perceived African American, and who do not have a dark skin complexion, and making false allegations of our conduct when we demanded access suggesting we are letting non-tenants inside of the building and pan handling which are offensive discriminatory allegations.

43.     42 USC 3604 (a) prohibits Defendants from making unavailable the premises based on race, color, or national origin which Defendants violated by their actions as set out above.

44.     As a result of Defendants Conduct, we were injured in that we suffered extreme hardship being without a home during four or more weeks while Defendant made housing unavailable, causing us to spend several thousand dollars on temporary shelter and eating-out, other losses such as cost for extended Rental of moving truck, but not limited to humiliation, shock, panic, emotional distress, and severe anxiety being left stranded by Defendants without a home.

Wherefore Claimants respectfully request relief as set out hereafter

**Second Cause of Action**
**Violation of the Fair Housing Act (42 USC §3604 (b))**
Discrimination based on terms, conditions, or privileges of Rental

45.     Claimants  hereby reallege and incorporate each and every allegation of the complaint as though set forth in full herein.

46.     Defendants as stated in the entire claim subjected us to different processes and treatment during the application and rental period than other applicants and Tenants when Defendants made us do the application process twice, made us resubmit financial information as aforementioned, made us put up a higher deposit treating our service animal as a pet, and delayed the performance of maintenance and repairs among other things that could be shown.

47.     As stated above, Defendants used a discriminatory business practice in giving us unequal treatment making us unequal to others by limiting our access to the front wheelchair access gate when other tenants who had a need and who did not have a need had access, showing we were treated with deliberate or reckless indifference towards our rights at a minimum.

48.     Defendants, further as a discriminatory business practice limited our reasonable access to repairs and pest control by delaying performance of maintenance and repairs, or never performing them thus violating this  Section.

49.     As a result, we suffered injury as set out in this entire claim.


Wherefore Claimants respectfully request relief as set out hereafter


### Third Cause of Action
### Violation of the Fair Housing Act 42 USC §3604(f)(3)(B)
Refusal to make a Reasonable Accommodation

50.     Claimants  hereby reallege and incorporate each and every allegation of the complaint as though set forth in full herein

51.     *"A refusal to provide a reasonable accommodation under the Fair Housing Act occurs when the disabled resident is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings"* (*Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96 (3d Cir. 2017))

52. An undue delay in granting a reasonable accommodation may amount to a refusal under the Fair Housing Act. 42 U.S.C.A. § 3604(f)(3)(B). (*Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96 (3d Cir. 2017))

53. Claimants qualify as natural persons entitled to the protections of the Fair Housing Act on the basis that a lease agreement is now active between Defendants and us, and that Defendants did offer or rent housing to us, and Defendants were not otherwise exempt from the Fair Housing Acts provisions since the building has approximately 60 or more units for rent, and Defendants operate for profit as a Corporation authorized to issue 100,000 shares of Class A Common Stock, and 100,000 shares of Class B Common Stock.

54. As stated above, Christina Wells was a Director of MOSSER, and Property Manager of the building, and when she replaced her predecessor Micha, she inherited the obligations to us which were due and owing, such as to keep a working functioning elevator and to deliver to us the Front Gate Key allowing us to wheel our child's stroller inside to the elevator, which she and her predecessor has repeatedly failed our request to do so, and instead of fulfilling her duties, she returned tardy false allegations concerning our alleged conduct in order to justify denying us access to the gate.

55. Access to both front doors is an implied right to the contract, and Defendants agreed upon our initial showing of the premises to provide access to the front gate, but even if Defendants did not, our request would be considered a reasonable accommodation under the fair housing act as stated prior since our son is unable to walk, and his normal method of transportation is by stroller on wheels requiring access via a ramp or other mechanism designed for wheel chairs, and further it is a disability making us unequal to persons without a stroller who wish to enter the building and return

home showing a disadvantage to us invoking the Fair Housing Act duty to make a reasonable accomadation.

56.     It was not unreasonable nor did it create a hardship for Defendants to make the reasonable accommodation to provide us a Key which would give us access to the Front Gate through the wheelchair access point.

57.     Further, we were hit by a negligent driver at the end of May causing Marimar to suffer injury to her back causing lack of mobility, and causing serious pain which limited her ability to lift and carry objects, limited her ability to walk long distances, and further caused her to suffer excessive pain doing regular activities such as feeding her son, putting his clothes on, traveling inside of a car, preparing dinner etc., and therefore was disabled under the Fair Housing Act which the disability was visible and known to friends and family, to which a reasonable accommodation could be made by Defendants for us to have wheel chair access but Defendants refused to do so on the basis of Discrimination Towards our perceived racial identity of African American and Latino.

58.     *"Whether there has been a refusal to provide a reasonable accommodation under the Fair Housing Act, actual or constructive, depends on the circumstances" (Revock v. Cowpet Bay W. Condo. Ass'n, 853 F.3d 96 (3d Cir. 2017)).*

59.     The circumstances here show that Defendants engaged in a pattern of deceit and delay at the application stage, and during the course of the term of the lease which demonstrate that Defendants were prejudice against us, and delayed making repairs on the basis of our perceived race and color, and Defendants could have made repairs faster and could have complied with our request for the gate key the way Defendants would treat other Tenants who are non-black and who are not considered a "family", and thus refused to make reasonable accommodations based on racial reasons, and family status.

60.     As a result of Defendants failure to give us access to that gate, as stated above, we were required to lift our sons stroller up the stairs on a regular basis or refrain from using a stroller at times to avoid having to carry it with our son, which caused an extreme hardship, and further caused us fatigue from having the extra burden to carry our son up the stairs each day in addition to our personal effects.

Wherefore Claimants respectfully request relief as set out hereafter

### Fourth Cause of Action
### Interference with the exercise or enjoyment of Rights protected by the Fair Housing Act
42 U.S.C.A. § 3617.

61.     Claimants  hereby reallege and incorporate each and every allegation of the complaint as though set forth in full herein.

62.     A Fair Housing Act interference claim requires proof of three elements: (1) that the plaintiff exercised or enjoyed any right granted or protected by the Act; (2) that the defendant's conduct constituted interference; and (3) a causal connection existed between the exercise or enjoyment of the right and the defendant's conduct. 42 U.S.C.A. § 3617.

63.     Defendants as set forth by the facts in this entire Claim, have interfered with the enjoyment of rights protected by the Fair Housing Act 42 USC 3601 et sq, and further used discrimination, coercion, and harassment in order to cause us to abandon our rights as set out in this entire claim.

64.     As set out above, at all times mentioned we were primarily exercising universal human rights, and natural rights of man to his own survival and subsistence which depends on the peaceful enjoyment of our home, which includes but is not limited to the Internationally recognized Right to be free from all forms of racial discrimination, especially in renting and keeping housing, and to be free from inhabitable conditions, and as showed in this entire claim, Defendant Christina

Wells and other Doe Defendants of MOSSER engaged in conduct which interfered with the exercise and enjoyment of those Rights mentioned, or was harassing, intimidating or coercive towards us based on our perceived racial identity of Black or African American and Latino.

65.     As a direct consequence of Defendants use of discriminatory practices as set out prior, Defendants have interfered with our private business which directly supports our housing and food cost, as a result of a failure to keep the elevator working, and we relied on daily use of the elevator as a bargained for right when we signed the lease agreement with Defendants.

66.     Further as a consequence of Defendants denying us wheelchair access, we have suffered fatigue and hardship coming into the building everyday which caused emotional distress and lessened our enjoyment of life and happiness.

67.     Additionally as a result of Defendants conduct as described herein, we suffered humiliation, fatigue, lost pecuniary earnings, emotional distress and mental anguish, and loss of enjoyment of our housing.

Wherefore Claimants respectfully request damages pursuant to law as set out hereafter

### Fifth Cause of Action
### **Breach of Contract**

68.     Claimants  hereby reallege and incorporate each and every allegation of the claim as though set forth in full herein.

69.     A lease agreement was signed and delivered to MOSSER and went into effect in around the month of May 2021 (**See Exhibit A**), and at all times during the term of the lease faithfully performed any duties owed by us to MOSSER Defendants and their shareholders, or was excused from doing so.

70.      Christina Wells and MOSSER Defendants owed us a duty to provide access to the front entry point  since it was bargained for and was a reason on which we signed the lease agreement, and Defendant failure to provide us access to the gate breaches our agreement.

71.      As a result of the aforementioned breach by Defendants, we suffered extreme hardship on a daily basis being forced to carry our stroller with our son along with our backpack and groceries, and other belongings up flights of stairs when this could be alleviated if Defendants only would have given us the gate key.

72.      Further as a result of Defendants negligence over the course of 9 months, Defendants on numerous days kept two broken elevators preventing us from conducting our private business causing lost earnings since it requires access through the basement and through the front gate which defendants refuse to give us the key for, and caused emotional distress and fatigue causing us to walk up five flights of stairs with a child and his stroller and other property in our arms on several occasions while Defendants delayed fixing the elevator for several days and left it broken for nearly two weeks, and for many trips during the term of the lease, the elevator failed to perform correctly getting stuck between floors and failing to arrive at our floor after being called, but arriving to other floors inside of the building oddly, causing us to walk to other floors in order to use the elevator.

73.      Defendants also kept uninhabitable conditions as stated above during the term of the lease causing injury as described in this entire claim.

74.      At all times we made a good faith attempt to mitigate or lessen the damages but defendants were reckless and intentional in committing the violations as set out in this claim.

Wherefore Claimants respectfully request relief as set out hereafter

**Sixth Cause of Action**
**Negligence for breach of duty of habitability in violation of Civil Code §1941.1**
Failure to maintain habitable premises

75.     Claimants hereby reallege and incorporate each and every allegation of the complaint as though set forth in full herein.

76.     Christina Wells and MOSSER carry out the business of a property management company of the building which is the subject of this action, and on that basis owe a duty to us to keep habitable premises and to make repairs according to state, local, and federal policy, and Defendants breached that duty as stated in this entire claim by keeping premises which are untenable according to California Civil Code Section 1941.1 since the premises contains an unabated fly infestation, which qualifies and is enumerated as an untenable condition in Health and Safety Code Section 17920.3 (a)(12).

77.     As stated above during the entire term of the lease, Defendants allowed this fly infestation to persist on the premises after being notified and fully aware of the exitance, and after an excessive delay sent someone to verify its existence but never corrected the matter.

78.     The excessive presence of living and dead flys has been seen in every room of our home as a result of the condition, walking on food left on table or counter, dead flies have been seen floating inside of water filled cups, juice filled cups, and would be found dead on top of frozen ice cubes inside of the refrigerator.

79.     As a direct result of defendants conduct in breaching the habitability code, we suffered loss of peaceful enjoyment of premises, devaluation of the worth and value of premises, and emotional distress from the nuisance caused.

Wherefore Claimants respectfully request relief as set out hereafter

**Seventh Cause of Action**
<u>Unjust Enrichment</u>

80.     Claimants hereby reallege and incorporate each and every allegation of the complaint as though set forth in full herein.

81.     At all times mentioned, Defendants were acting in bad faith and never intended to perform their duties to us under the lease agreement or under the law.

82.     MOSSER Defendants have received a promissory note from us and in addition have received tender in the amount of nearly $15,000 towards contributions for the Note which secures Defendants possession of the building, and Defendants for the reasons stated in this claim are not entitled to the amounts received and therefore have been unjustly enriched if they do not return a portion to us which is fair and just, for the failure to give us bargained for consideration in failing to provide a habitable premises, in failure to make timely repairs, failure to deliver the front gate keys, failure keep a working elevator, and failure to keep the premises free from Tenants who are engaging in behaviors which are harassing annoying and amount to stalking and other forms of cruel, inhuman, and degrading treatment.

83.     Defendants have inserted into the contract and charged us for a pet deposit of $500 and rent in the amount of $75 in for each month on account of having a dog on the premises, which we never mutually agreed to pay that amount, and only signed the lease with that provision because Defendants had already used discriminatory practices denying us housing and making us fill out a new application, and we reasonably believed that if we complained about any of the terms, we would be denied again by Defendants and left without housing for good, and thus we acted under duress at all times during the signing of the contract.

84.     Equity should see that Defendants disgorge all profits and ill-gotten earnings in connection with renting or advertising housing to us. We demand disgorgement of all profits and equites earned deriving from us in any manner, shape, or form, including but not limited to all of our

tender of credit or money of exchange under the lease agreement, and any equites or assets which is existing at this time or at any time during the course of the term of our lease.

Wherefore Claimants respectfully request relief as set out heretofore and hereafter

## 8th Cause of Action
### To declare a freehold estate

85.   Claimants hereby reallege and incorporate each and every allegation of the complaint as though set forth in full herein.

86.   Respondent MOSSER is a corporation given the characteristics of man, which violates natures law and natures god, and thus is a non-living artificial entity existing only by privilege, is a creature of the State and is deemed to act for the public good.

87.   Respondent MOSSER is controlled by persons having shares only, the shareholders not owning any of the property which is alleged to belong to Defendant MOSSER, but instead having possession of a certain class of shares or stock thereof, and thus certain rights related thereto, such as but not limited to the right to control, which does not include the right to profit from the wrongful actions of MOSSER employees, or to deprive aboriginal and indigenous peoples of a continuous right to an estate on the land where Defendant MOSSER operates through it's employees and shareholders by bad faith and discriminatory acts.

88.   A corporation has no right to exist, and has no right to own property or land, and the concept of a Corporation holding land or Title and displacing the living people of the land from their home violates natures law and natures god, and claimants reject the validity of Defendants claim of exclusive ownership of the above described premises which is the subject of this action.

89.   Claimants are living breathing people who are descendants of Aboriginal and Indigenous People of North, South, and Central America, namely the Moors having ties to various tribal nations of Al Moroc (America).

90.     Claimants are part of a class of aboriginal and indigenous peoples of the Continental United States of America who's ancestors have been displaced, miseducated, and denationalized, by systematic oppression and genocide causing a generational loss of knowledge of our heritage, culture, and identity, and who seek to regain that identity, heritage and culture, and therefore exist a fiduciary duty owed to us by the United States of America to restore to us the land and resources which we anciently used to maintain subsistence, or which we now acquire possession of, which is currently under the control of the United States.

91.     As stated above, Defendant employees of MOSSER who are operating the MOSSER Corporation have threatened our peaceful enjoyment of our home and used bad faith discriminatory practices towards us over the course of approximately 9 Months without showing signs of cessation, showing bad faith and unjust enrichment, and have willfully violated the United States Code of Law, and thus have unclean hands, and are indebted to us by the course of their actions, and we have good equitable title and right to claim as against the Property of Defendant in which we have possession.

92.     Claimants hereby sue to declare a freehold estate in a portion of the land and any improvements going with the land located at the geographical latitude 37.7884, and longitude -122.4161, also having a commercially known address of 952 Sutter Street, San Francisco, California and that all of the interest in this freehold estate shall be held in Trust for the benefit of the Beneficiaries of the Immortal Jamil Malik Bey Reversioner Trust in Northwest Amexem as set out in the Declaration of Trust.

93.     Claimants sue for a decree that the Immortal Jamil Malik Bey Reversioner Trust in Northwest Amexem has a fee simple estate in the premises which has already been leased to us, and that we have all rights that a lawful owner would.

94.     Currently, Defendants condition is that the subject premises is subject to a local rent control ordinance which means Defendants can practically never require us to leave from the premises so long as we do not cause a nuisance on the premises, and so long as we settle our monthly Rent obligations with Defendants who claim a right to collect, which is essentially an Estate-for-Life.

95.     We challenge Defendants right to collect any rent from us at all based on the fact that Defendants are with unclean hands, have caused us actual losses in the amount of $8,025 at first

- 29

assessment, and we seek compensatory and punitive damages in the amount of $700,000 per each claimant, totaling $2,100,000 in compensatory and punitive damages for mental and physical injury from being discriminated against as set out above, and from damage to our reputation and character placing us in a reasonable fear of being displaced from the premises based on discriminatory false and fraudulent conduct of Defendants, and thus there exist good cause to declare an estate and that Defendant should disgorge all profits, and portion of the estate as described above.

Wherefore Claimants respectfully request relief as set out hereafter

### JURY DEMAND

96.  Plaintiffs hereby demand a jury trial in this action on all claims at law only.

### Relief Requested by this Claim

Wherefore Claimants respectfully request relief as set out hereafter:

1.  For general damages according to proof;
2.  For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;
3.  For punitive damages and exemplary damages in amounts to be determined according to proof as to all Defendants and DOES 1 through 99 and/or each of them;
4.  For the Decrees and relief set out above
5.  For reasonable attorney's fees if any;
6.  For cost of suit herein incurred;
7.  For such other and further relief as the Court deems just and proper.

I am:   *Jamil Malik Bey* All Rights Reserved

Jamil Malik Bey in propria persona, sui juris, and in the capacity as Trustee of the Jamil Malik Bey Reversioner Trust in Northwest Amexem; Authorized Representative for Beneficiaries Marimar Cornejo and Heru Ibrahim Brokemond Bey

_____
Marimar Cornejo